HOBSON, Justice (Ret.).
The Jacksonville Expressway Authority, an agency of the State of Florida created by Chapter 29996, Acts of 1955 (Chapter 349, Florida Statutes, F.S.A.) on July 24, 1963, filed its petition in the Circuit Court of Duval County, Florida, against the state of Florida and others, all as prescribed by Chapter 75, Florida Statutes, F.S.A., for the validation of an issue of revenue bonds. Prior to the filing of the above-mentioned petition, one Leon Anderson, on February 8, 1963, filed a complaint for injunction against Duval County and the Jacksonville Expressway Authority. In and by his complaint he sought to enjoin the Expressway Authority from issuing the bonds which are the subject matter of this validation pro *514 ceeding. He also prayed that the County of Duval be enjoined from consenting to pledge the excess 80% of the 2-cent gas tax as additional security for such bonds. On August 2nd, 1963, these two suits were consolidated by order of the court.
After the taking of the testimony and introduction of all of the pertinent exhibits but before the entry of the final decree, the court, pursuant to oral motion of Leon Anderson, viewed, with counsel for all parties, the location of each and every part of the project for improvement, as adopted and found necessary by the Jacksonville Expressway Authority, to be constructed with the proceeds of the bonds sought to be validated.
The learned Circuit Judge, on October 11', 1963, entered a final decree validating said bonds. Pursuant to a motion filed by Anderson, the presiding judge did, on October 24, 1963, amend in part paragraphs 3 and 28 of the original final decree.
In addition to the order of validation the final decree contained a permanent injunction couched in the following language: “that the several property owners, taxpayers and citizens of Duval County and Leon County, including Leon D. Anderson and any nonresidents owning property or subject to taxation therein and others having or claiming any right, title or interest in property to be affected by the issuance of the 1963 bonds or to be affected in any way thereby are hereby permanently enjoined and restrained from filing, maintaining or prosecuting any suit or suits pertaining to the 1963 bonds or to the right of the Authority to issue such bonds or to the issues decided by this proceeding, except, however, the right to such persons to appeal from this Final Decree.”
Leon Anderson has joined the State of Florida in this appeal from the Final Decree as amended.
The appellants pose as their first point of law: “THE PROPOSED ISSUE OF REVENUE BONDS OF THE JACKSONVILLE EXPRESSWAY AUTHORITY, SERIES 1963, SHOULD NOT HAVE BEEN VALIDATED.”
Whether these bonds should have been validated is the primary question and, of course, the answer to said query will be dis-positive of this appeal. We do not deem it appropriate at the threshold of this opinion to decide this point because we feel that to do so would be putting “the cart before the horse.” This is so because the other points of law raised by appellants appear to be the bases which form the predicate upon which their first contention is founded. Therefore we will go now to a consideration of those points of law which appellants obviously believe should be resolved in such manner as to result in a reversal in toto of the final decree, as amended.
The first of these points is, and we quote: “THE JACKSONVILLE EXPRESSWAY AUTHORITY IS NOT AUTHORIZED TO CONSTRUCT ANY FURTHER EXTENSIONS, ADDITIONS OR IMPROVEMENTS TO TPIE JACKSONVILLE EXPRESSWAY SYSTEM OR APPURTENANT FACILITIES, INCLUDING ALL NECESSARY APPROACHES, ROADS, BRIDGES AND AVENUES OF ACCESS THERETO.”
Appellants apparently hold the view that the Authority may not construct extensions, additions or improvements or appurtenant facilities such as necessary approaches, roads, bridges and avenues of access or otherwise extend the system beyond its “original conception.”
This point appears to be without merit since the second paragraph of F.S. 349.04 (1), F.S.A.[1] specifically confers the power *515 to construct these facilities. No decision has been cited wherein this paragraph has been construed contra and we have been unable to find any. We are of the opinion that Chapter 349, F.S., when considered in its entirety, was not enacted for the sole purpose of acquiring and completing the then unfinished Jacksonville Expressway system and eliminate only for the time being the solution of traffic problems in Duval County. It would not only be improper for this Court to presume that the legislators were unaware of the historic and traditional growth and expanding traffic needs of this great State, particularly in metropolitan areas such as Duval County, but such a presumption would indeed be rash if not invidious.
The second point of law- leading up to the initial and real question presented here is: “THE STATE ROAD DEPARTMENT OF FLORIDA IS NOT AUTHORIZED TO GRANT TO THE JACKSONVILLE EXPRESSWAY AUTHORITY A CASH ALLOCATION OF $1,500,000.00 TO BE USED TO CONSTRUCT EXTENSIONS,-. ADDITIONS OR IMPROVEMENTS TO THE JACKSONVILLE EXPRESSWAY SYSTEM.”
It is the appellants’ contention that F.S. 349.07, F;S.A. permits the State Road Department to pay monies to the Authority only from (a) income accruing from the operation of the Expressway, (b) Duval County gasoline tax funds, and (c) appropriations made pursuant to legislative enactment. They further contend that none of these sources will be available for making payment.
Here again we are furnished no case law by the appellants to uphold their contention. On the other hand, F.S. 349.07, F.S.A.[2] (in *516 particular the last two paragraphs thereof) clearly appears to authorize such an expenditure. Moreover, this Court has upheld this section of the statute in State v. Jacksonville Expressway Authority, Fla., 93 So.2d 870, a case quite similar to the instant suit.
The third point of law presented by appellants in support of their view that these bonds should not have been validated is: “THE JACKSONVILLE EXPRESSWAY AUTHORITY MAY NOT REFUND PRESENTLY OUTSTANDING BONDS OF THE AUTHORITY, SERIES 1957, BY MEANS OF ENTERING INTO AN ESCROW DEPOSIT AGREEMENT WITH THE TRUSTEE FOR SAID OUTSTANDING BONDS, WHICH SAID AGREEMENT PROVIDES FOR THE REDEMPTION AND PAYMENT OF SAID 1957 BONDS.”
We do not find in the brief of either of the appellants any decision of this or any other court which supports the argument *517 that the bonds proposed to be refunded, which were issued in 1957, will be prematurely retired should the final decree herein be affirmed. The State at least appears to hold the view that the entry into an Escrow Deposit Agreement has the effect of accelerating the actual redemption of the 1957 bonds to a date prior to the earliest date on which such bonds may be redeemed prior to maturity, or, to-wit: July 1st, 1967. We are unable to agree with this contention. In fact the method employed by the Authority to refund its outstanding bonds in the instant matter is quite similar, if not identical, to that used by the Authority in 1957, which method was approved by this Court in State v. Jacksonville Expressway Authority, supra. See also State v. Florida State Turnpike Authority (Fla.1961), 134 So.2d 12.
Albeit we are not certain that the point is properly raised; since counsel for Anderson argues in his brief, and in oral argument had much to say, about the inclusion in this project of Chaffee Road, Soutel Drive and Lane Avenue, we will discuss this objection to the validation of the subject bonds.
Although the inclusion of these three minor and comparatively infinitesimal projects will cost approximately three million dollars, they will aid in the distribution of traffic and be needed in the foreseeable future in connection with the inevitable further enlargement of the expressway system. No one versed in the law would question the fact that the Authority is not authorized to construct these roads as an independent project but they are properly included as part and parcel of this proper and necessary expansion of the expressway system which is the predominant purpose to be accomplished in the expenditure of the funds realized from the sale of the $140,000,000.00 bond issue. The contention that the inclusion of these at present unconnected roads' requires a holding that the entire bond issue is invalid and that such minor projects do not justify the application of the principle of de minimis non curat lex is reminiscent of the title of one of the works of the immortal Bard of Avon, “Much Ado About Nothing.” An examination of Chapter 349 clearly indicates a full measure of flexibility to accomplish its obvious purpose. We are of the opinion that the predominant, continuing purpose of the Authority is to meet a pressing need for extension and enlargement of the existing expressway system made necessary by the continuous growth in population and consequent traffic congestion which should have been and was reasonably anticipated by the Legislature at the time of the creation of said Authority. We hold that there is no merit in this point raised by the appellants and that the rule de mini-mis non curat lex is applicable.
Finally appellants pose the following point of law: “THE CIRCUIT COURT HAS NO AUTHORITY TO ENJOIN OR RESTRAIN ANY PERSON FROM FILING, MAINTAINING OR PROSECUTING ANY SUIT PERTAINING TO THE 1963 BONDS SUBSEQUENT TO VALIDATION THEREOF BY THE CIRCUIT COURT.”
The injunction contained in the final decree is consonant with that which we conceive to have been the legislative intent at the time of the enactment of Section 75.09,’[3] *518 Florida Statutes, F.S.A., such intent being that a decree of validation entered pursuant to Chapter 75, Florida Statutes, F.S.A., should be final in all respects as to all parties affected thereby, subject only to the right of appeal. We cannot be persuaded that the inclusion in the final decree of the permanent injunction was harmful error in any event. Consequently, the entry of said permanent injunction cannot be held to be reversible error. Moreover we affirmed the final decree of validation which contained a somewhat similar injunction in the case of Lynn v. City of Fort Lauderdale (Fla.1955), 81 So.2d 511.
We now return to the first point of law raised by appellants: “THE PROPOSED ISSUE OF REVENUE BONDS OF TPIE JACKSONVILLE EXPRESSWAY AUTHORITY, SERIES 1963, SHOULD NOT HAVE BEEN VALIDATED.”
,It should be quite clear to any reader who has borne with us thus far that we are of the opinion that: The Authority is authorized to construct the extensions, additions and improvements to the Jacksonville Expressway system and the appurtenant facilities, including all necessary approaches, roads, bridges and avenues of access thereto which it proposes to do with the funds realized from the issue of revenue bonds, series 1963, which were validated by the final decree from which this appeal was prosecuted; the State Road Department of Florida authorized to grant to the Authority a cash allocation of $1,500,000.00 to be used in connection with such work; the Authority may refund presently outstanding bonds of the Authority, Series 1957, by means of the Escrow Deposit Agreement as hereinbefore outlined; the inclusion of Chaffee Road, Soutel Drive and Lane Avenue in the overall picture of this construction project; which has been determined by the Authority and the Circuit Court to be “desirable and proper” * * * “necessary and in the best interest of the Authority, Duval County, the citizens and inhabitants thereof and the State of Florida” is de minimis and the primary and predominant use to be made of the funds derived from the bonds is definitely a public purpose, and a purpose for which the Authority was created. Furthermore, the injunction contained in the final decree does not constitute reversible error.
The final decree as amended should be and it is hereby
Affirmed.
DREW, C. J., and THOMAS, O’CON-NELL and CALDWELL, JJ., concur.

. “349.04 Purposes and powers. —
“ (1) GENERAL. — The authority created and established by tire provisions of this chapter is hereby granted and shall have the right to acquire, hold, construct, improve, maintain, operate, own and lease in the capacity of lessor, the Jacksonville expressway system (hereinafter referred *515 to as ‘system’) heretofore partially constructed or acquired by Florida state improvement commission in the Jacksonville, Duval county, metropolitan area, as more specifically described in the proceedings of said commission which authorized the issuance of twenty-eight million dollars bonds of said commission for said purpose, and as hereafter completed or improved or extended as authorized by this chapter, and all appurtenant facilities, including all approaches, streets, roads, bridges and avenues of access for said Jacksonville expressway system, and to construct or acquire extensions, additions and improvements to said system and to complete the construction and acquisition of said system.
“It is the express intention of this chapter that said authority, in completing the construction of said Jacksonville expressway system, shall not be limited to the description thereof contained in said proceedings of said commission which authorized the issuance of twenty-eight million dollars bonds to finance part of the cost thereof, but shall be authorized to construct any additional extensions, additions or improvements to said system, or appurtenant facilities, including all necessary approaches, roads, bridges and avenues of access, with such changes, modifications or revisions of said project as shall be deemed desirable and proper.”

. “349.07 Lease-purchase agreement.—
In order to effectuate the purposes of this chapter and as authorized by this chapter, the authority may enter into a lease-purchase agreement with the state road department relating to "and covering the Jacksonville expressway system.
“Such lease-purchase agreement shall provide for the leasing of the Jacksonville expressway system, by the authority, as lessor, to the state road department, as lessee, shall prescribe the-term of such lease and the rentals to be paid .thereunder and shall provide. that upon the completion of the faithful performance thereunder and the termination of such lease-purchase agreement, title in fee simple absolute to the Jacksonville expressway system as then constituted shall be transferred in accordance with law by the authority, to the state and the authority shall deliver to the state road department such deeds and conveyances as shall be necessary or convenient to vest title in fee simple absolute in the state.
“Such lease-purchase agreement may include such other provisions, agreements and covenants as the authority and the state road department deem advisable or required, including, but not limited to, provisions as to .the bonds to be issued under and for the purposes of this chapter, the completion, extension, improvement, operation and maintenance of the *516 Jacksonville expressway system and the expenses and cost of operation of said authority, the charging and collecting of tolls, rates, fees and other charges for the use of the services and facilities thereof, the application of federal or state grants or aid which may be made or given to assist the authority in the completion, extension, improvement, operation and maintenance of the Jacksonville expressway system, which the authority is hereby authorized to accept and apply to such purposes, the enforcement of payment and collection of rentals and any other terms, provisions or covenants necessary, incidental or appurtenant to the making of and full performance under such lease-purchase agreement.
“The state road department, as lessee under such lease-purchase agreement, is hereby authorized to pay as rentals thereunder any rates, fees, charges, funds, moneys, receipts or income accruing to the state road department from the operation of the Jacksonville expressway system and the Duval county gasoline tax funds and may also pay as rentals any appropriations received by the state road department pursuant to any act of the legislature of the state heretofore or hereafter enacted; provided, however, that nothing herein nor in such lease-purchase agreement is intended to nor shall this chapter or such lease-purchase agreement require the making or continuance of such appropriations, nor shall any holder of bonds issued pursuant to this chapter ever have any right to compel the making or continuance of such appropriations.
“No pledge of said Duval county gasoline tax funds as rentals under such lease-purchase agreement shall be made without the consent of the county of Duval evidenced by a resolution duly adopted by the board of county commissioners of said county, which resolution, among other things, shall provide that any excess of said pledged gasoline tax funds which is not required for debt service or reserves for such debt service for any bonds issued by said authority shall be returned annually to the state road department for distribution to Duval county as provided by law.
“Said state road department shall have power -to covenant in any lease-purchase agreement that it will pay all or any part of the cost of the operation, maintenance, repair, renewal and replacement of s»id system, and any part of the cost of completing said system to the extent that the proceeds of bonds issued therefor are insufficient, from sources other than the revenues derived from the operation of said system and said Duval county gasoline tax funds. Said state road department may also agree to make such other payments from any moneys available to said commission, said county or said city in connection with the construction or completion of said system as shall be deemed by said state road department to be fair and proper under any such covenants heretofore or hereafter entered into.
“Said system shall be a part of the state road system and said state road department is hereby authorized, upon the request of the authority, to expend out of any funds available for the purpose such moneys, and to use such of its engineering and other forces, as may be necessary and desirable in the judgment of said state road department, for the operation of said authority and for traffic surveys, borings, surveys, j>reparation of plans and specifications, estimates of cost and other preliminary engineering and other studies; provided, however, that the aggregate amount of moneys expended for said purposes by said state road department shall not exceed the sum of three hundred seventy-five thousand dollars.”

. “75.09 Effect of final decree. — In the event the decree of the circuit court validates such bonds, certificates or other obligations, which may include the validation of the county, municipality, taxing district, political district, subdivision, agency, instrumentality or other public body itself (hereinafter referred to as ‘public body’) and any taxes, assessments or revenues affected, and no appeal is taken within the time above prescribed, or if taken and the decree of the circuit court is affirmed, such decree shall be forever conclusive as to all matters adjudicated against the petitioner and all parties affected thereby, including all property owners, taxpayers and citizens of the petitioner, and all others having or claiming any right, title or interest in property to be affected by the issuance of *518 said bonds, certificates or other obligations, or to be affected in any way thereby, and the validity of said bonds, certificates or other obligations (hereinafter referred to as ‘obligations’), or of any taxes, assessments or revenues pledged for the payment thereof (hereinafter referred to as ‘security’), or of the proceedings authorizing the issuance of such obligations, including any remedies provided for their collection (hereinafter referred to as ‘proceedings’), shall never be called in question in any court by any person or party, either as a plaintiff or defendant.”